IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

MICHAEL MOSLEY,

                    Petitioner,

          vs.

JOHN RICH, Superintendent, Elmira
Correctional Facility,[1]

                    Respondent.

No. 9:18-cv-00428-JKS

MEMORANDUM DECISION

          Michael Mosley, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ

of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Mosley is in the custody of the

New York State Department of Corrections and Community Supervision ("DOCCS") and

incarcerated at Elmira Correctional Facility.  Respondent has answered the Petition, and Mosley

has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

          In 2010, Mosley was charged with first-degree murder, two counts of second-degree murder,

and first-degree burglary in connection with the January 2002 deaths of Samuel Holley and Arica

Schneider.  On direct appeal of his conviction, the Appellate Division of the New York Supreme

Court laid out the following facts underlying the charges against Mosley:

> On January 25, 2002, Sam Holley and his girlfriend, Arica Schneider, were murdered
> in their apartment in the City of Troy, Rensselaer County.  Each victim's body had at least
> 30 stab wounds as well as evidence of extensive blunt force trauma.  Holley had been a
> member of a gang and a crack cocaine dealer.  Although police were able to establish a DNA

---

          [1]     John Rich, Superintendent, Elmira Correctional Facility, is substituted for Harold
Graham, Superintendent, Auburn Correctional Facility.  FED. R. CIV. P. 25(c).

profile and usable palm print of a potential suspect from blood on a bed sheet and a palm print on the living room wall, they were unable to find a match in the state or federal databases. After an investigation that included numerous false leads over more than five years, two men—Terrence Battiste and Bryan Berry (reputedly members of a gang known to target and rob drug dealers)—were indicted for the murders. However, before the trial of Battiste and Berry commenced, a routine check of the DNA profile returned a match to [Mosley's] DNA, which had recently been added to the state database.

Upon investigating [Mosley], police soon learned, among other things, that he had once served as a cocaine runner for Holley. After interviewing [Mosley] several times and gathering further evidence purportedly linking him to the crimes, the indictment against Battiste and Berry was dismissed without prejudice and [Mosley] was charged with murder in the first degree, murder in the second degree (two counts) and burglary in the first degree.

*People v. Mosley*, 994 N.Y.S.2d 429, 431 (N.Y. App. Div. 2014).

Mosley proceeded to a jury trial on May 5, 2011. Mosley did not dispute the presence of his blood and palm print at the crime scene. Rather, he testified at trial that he had discovered the blood-covered victims and shook them to see if they were still alive. Mosley claimed that he did not alert authorities because he did not want to get himself or his family involved, especially in light of his knowledge of Holley's drug and gang activities.

After hearing evidence from, among others, the medical examiner, an expert serologist, crime scene analyst and meteorologist, the jury rejected Mosley's explanation that he discovered the victims' bodies the morning after they had been murdered, that he was bleeding from a hand injury he suffered while snowboarding the evening before at a gorge located in Troy, and that his blood transferred onto the victims' bedsheet as he attempted to move the mattress to retrieve a hidden cell phone. The jury found Mosley guilty of first-degree murder and first-degree burglary. The trial court sentenced Mosley to an aggregate term of life imprisonment without the possibility of parole ("LWOP").

Mosley moved to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10. In that *pro se* filing, Mosley argued that: 1) trial counsel was ineffective for

failing to: a) consult with and call a blood expert and a forensic meteorologist, b) "investigate, interview, and subpoena witnesses in relation to third-party culpability," c) conduct an adequate pretrial investigation, d) "investigate [Mosley's] residence, job, and other facts relevant to the defense," e) preserve Mosley's right to a public trial; f) move to set aside the verdict pursuant to CPL § 330.30, and g) request a ruling in limine or object to the prosecutor's "improper questioning and comments about [Mosley's] tattoo;" and 2) Mosley is actually innocent of the crimes.  The county court denied Mosley's motion without a hearing.  Mosley sought leave to appeal the denial to the Appellate Division, which was granted and considered in conjunction with Mosley's counseled direct appeal.

On direct appeal, Mosley asserting that: 1) the verdict was against the weight of the evidence; 2) the court erred in admitting evidence that Mosley "did not com[e] forward with an exculpatory account before his arrest, and that he invoked his right to remain silent and right to counsel upon his arrest;" 3) the trial court erred in allowing the prosecution to question his mother about her knowledge of Mosley's March 2002 driving while intoxicated ("DWI") arrest; 4) the prosecution's summation remarks about Mosley's tattoos and DWI arrest were improper; and 5) trial counsel was ineffective for: a) failing to object to evidence of Mosley's pre-arrest silence, b) belatedly objecting to the references to Mosley's invocation of his rights upon arrest, c) failing to object to the prosecutor's references to Mosley's tattoo, and d) failing to object to certain summation comments by the prosecutor, which he alleged equated Mosley's pretrial silence with criminal propensity.  Mosley also filed a *pro se* supplemental brief in which he contended that: 1) the prosecutor committed misconduct by comparing Mosley's mugshot to that of a man who an eyewitness said was not the person she saw outside of the crime scene, but looked "a lot" like that

3

person, and by acting as an unsworn witness during the cross-examination of Mosley's mother; and 2) trial counsel was ineffective for failing to object to the prosecutor's misconduct.

On appeal from the order denying his CPL § 440.10 motion, Mosley submitted a counseled brief arguing that county court erred in denying the motion without a hearing. Mosley also filed a supplemental *pro se* brief on that appeal, additionally arguing that: 1) his Sixth Amendment rights were violated when the prosecutor "implicitly alleged that a non-testifying witness saw [Mosley] at the scene of the crime" and his attorney failed to object; 2) his right to a public trial was violated when his attorney excluded Mosley's mother and aunt from voir dire; and 3) he is actually innocent. The Appellate Division granted Mosley's leave application for discretionary appeal of the denial of his CPL § 440.10 motion.

The Appellate Division unanimously affirmed the judgment of conviction but reversed the order denying Mosley's CPL § 440.10 motion in a reasoned opinion issued on October 16, 2014. *Mosley*, 994 N.Y.S.2d at 435. The Appellate Division remitted the CPL § 440.10 matter to the county court for a hearing. *Id*. Mosley sought leave to appeal from the portion of the Appellate Division's order affirming his judgment of conviction. The Court of Appeals denied leave without comment on December 13, 2014. *People v. Mosley*, 25 N.E.3d 350, 350 (N.Y. 2014).

On November 30, 2015, county court held a hearing on Mosley's CPL § 440.10 on Mosley's ineffective assistance and actual innocence claims. Mosley was represented by counsel at the hearing, in which Mosley and numerous witnesses, including trial counsel, testified over eight days. After the hearing, the county court denied Mosley's CPL § 440.10 in a reasoned, unpublished opinion on April 18, 2016. Mosley filed a counseled leave to appeal to the Appellate Division, which was granted. Mosley filed both counseled and *pro se* briefs in support of that appeal. On

4

November 2, 2017, the Appellate Division affirmed the order denying Mosley's CPL § 440.10 motion. *People v. Mosley*, 64 N.Y.S.3d 707, 714 (N.Y. App. Div. 2017). Mosley filed a counseled application for leave to appeal to the Court of Appeals, raising his claim that trial counsel was ineffective for failing to present third-party culpability evidence. Mosley also filed a *pro se* leave application asking the Court of Appeals to review his various ineffective assistance claims. The Court of Appeals summarily denied leave on March 20, 2018. *People v. Mosley*, 102 N.E.3d 440, 440 (N.Y. 2018).

Mosley then timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on April 3, 2018. Docket Nos. 1, 4 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A). Briefing is now complete, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Mosley raises the following twelve grounds for relief. First, he claims he is actually innocent of the crimes. In Grounds 2 through 12, Mosley contends that counsel was ineffective for failing to: 2) present third-party culpability evidence, 3) "suppress [Mosley's] statements on the correct legal grounds," 4) object or ask for curative instructions "when the prosecutor improperly used [Mosley's] pre-trial silence and invocation of rights," 5) consult with or call forensic experts, 6) present witnesses and evidence to refuse the People's "false consciousness-of-guilt evidence regarding [Mosley's] hand injury," 7) present evidence and witnesses to refute the People's "false motive and opportunity evidence regarding [Mosley's] lifestyle, residence and job," 8) object or ask for curative instructions when the prosecutor showed Mosley's "unredacted mugshot," 9) protect his right to a public trial, 10) object to the prosecutor's "improper claims that [Mosley's] tattoo and DWI demonstrated a

propensity for violence and substance abuse, and were proof of guilt," 11) object to the prosecutor becoming an unsworn witness when cross-examining Mosley's mother, and 12) move to set aside the verdict based on counsel's ineffective assistance.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

6

correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed

to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28

U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    Actual Innocence (Ground 1)

Mosley first argues that he is "completely innocent of this crime."  Mosley raised his

actual innocence claim in his motion to vacate the judgment pursuant to CPL § 440.10, which

the county court initially denied without a hearing, but the Appellate Division remanded with

directions to hold a hearing.  After an 8-day hearing, the county court again denied the motion,

which was affirmed by the Appellate Division on appeal as follows:

> At the hearing, [Mosley] repeated his explanation with regard to the presence of
> his DNA and palm print at the crime scene.  Further, [Mosley's] wife (then girlfriend),
> who did not testify at the trial, confirmed that she observed and treated defendant's
> injured hand when he returned home from snowboarding the evening before the murders.
> [Mosley] also offered testimony by Terry Labor, a forensic scientist, and Stephen Wistar,
> a forensic meteorologist.  Labor testified that the blood stain on the bed sheet was
> transferred to the sheet through contact with an existing wound, a finding consistent with
> [Mosley's] explanation and contrary to the People's blood drop theory that [Mosley] was
> cut during the murders.  Labor also opined that the palm print would not have been a
> discernibly different color if it had been made when the victims were murdered or when
> [Mosley] ostensibly entered the apartment the following morning—a point contrary to
> the People's argument that the color of the palm print showed that it was made at the time
> of the murders.  Wistar testified that based on his review of the weather data and the
> topography and location of the area where [Mosley] claimed to be snowboarding, there
> was some snow present at the gorge during the time that [Mosley] claimed he was
> injured.  [Mosley] also presented testimony by a witness who claimed that he had been
> incarcerated with Battiste in 2005 and that Battiste spoke to him about details of the
> victims' murders and admitted that he was the driver the night they were murdered.
>
> In our view, the evidence submitted at the hearing failed to establish by clear and
> convincing evidence that [Mosley] did not murder the victims.  Much of the evidence
> presented at the hearing was also presented to the jury, which considered and rejected
> [Mosley's] explanation, and the jury's verdict was upheld on appeal.  At best, the
> additional evidence submitted in support of the motion to vacate arguably raised "[m]ere
> doubt as to [Mosley's] guilt, or a preponderance of conflicting evidence as to [Mosley's]
> guilt," neither of which is sufficient to support a motion to vacate a judgment based on

> actual innocence.  Accordingly, we find that County Court properly declined to vacate [Mosley's] conviction pursuant to CPL 440.10(1)(h) based on actual innocence.

*Mosley*, 64 N.Y.S.3d at 710-11 (citations omitted).

As an initial matter, to the extent Mosley argues that the state court erred in determining that the state courts erred in finding that Mosley did not prove his innocence by clear and convincing evidence, again, such determination is based on state law and not cognizable in these federal habeas proceedings.  *See Estelle*, 502 U.S. at 67-68.

While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009).  The Supreme Court has instead declined to answer the question, noting that where a "[p]etitioner has failed to make a persuasive showing of actual innocence[,] . . . the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence."  *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring).  Although the Second Circuit has also not ruled on whether a claim of actual innocence is cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing *Osborne*, 557 U.S. at 71, and noting that whether an actual innocence claim is cognizable is an open question), it has "come close" to granting habeas relief on grounds of actual innocence, *see DiMattina v. United States*, 949 F. Supp. 2d 387, 417 (E.D.N.Y. 2013) (citing cases).

Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, the Supreme Court has described the threshold showing of evidence as "extraordinarily high." *Herrera*, 506 U.S. at 417. "The sequence of the Court's decisions in *Herrara* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrara* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555.

Measured against this standard, Mosley has fallen short of establishing his actual innocence. In support of this claim, Mosley avers:

> Ample evidence presented at my 440.10 hearing proves that two other men, Terry Battiste and Bryan Berry, committed this crime. Both men were previously indicted for the crime, based on the testimony of an eye witness and multiple fact witnesses, who all testified to inculpatory admissions by the two men. The prosecutor readily admitted that the two men were conducting surveillance on the victims just prior to the crime. At their pre-trial hearings, two police officers testified that they had a concrete case against the men and were convinced of their guilt. Their ADA testified that he reviewed the whole case file and did not indict until he was convinced of their guilt, and that none of the witnesses against them received any deals. Battiste's wife owned a car just like the one seen on the night of the crime at the scene. Battiste's wife also threatened and bribed a woman to make up a false alibi for her husband. Battiste left the state after the crime. Berry made incriminating admissions about the crime, threatened to kill a man if he talked to the police, and asked for money to leave the state after the crime.

But as the Appellate Division decision makes clear, Mosley points to no evidence that conclusively exonerates him of the crime. Rather, he challenges the credibility and value of the evidence against him by pointing to inconsistencies in the evidence, and provided additional evidence in his § 440.10 hearing regarding corroboration of his story and other potential explanations for the evidence against him. As further discussed with respect to the corresponding ineffective assistance claims *infra*, nothing Mosley provided in the § 440.10

proceedings or in his Petition before this Court meet the "extraordinarily high" standard for demonstrating actual innocence in federal habeas proceedings.

The Court may discern that, construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the Petition attacking the value of evidence against him raises not only an actual innocence claim, but an additional claim that the evidence against him is legally insufficient to sustain Mosley's conviction.  As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the New York court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system

is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Here, Mosley attacks the value of the evidence against him and argues that the evidence presented in the § 440.10 hearing undermines the adverse evidence presented at trial.  But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses).  Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Although it might have been possible to draw a different inference from the conflicts in the evidence offered by each side, this Court is required to resolve that conflict in favor of the prosecution, whose theory of the case prevailed with the jury. *See Jackson*, 443 U.S. at 326.  In this case, the physical evidence presented at trial was sufficient to support Mosley's conviction,

particularly given the deference required under *Jackson*.  Accordingly, Mosley is not entitled to relief on this ground in any event.

B.      Ineffective Assistance of Trial Counsel (Grounds 2-12)

Mosley additionally contends that trial counsel rendered ineffective assistance for a variety of reasons.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Mosley must show that his attorney did not represent him within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for this ineffectiveness, the result would have been different.  *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard.  "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective

standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

1.      Claims raised in appeal of CPL § 440.10 denial and rejected in reasoned analysis

14

Mosley raised a number of ineffective assistance claims in his § 440.10 motion that were ultimately denied by the Appellate Division in reasoned analysis.  In Ground 2, Mosley faulted trial counsel for failing to call witnesses from the Battiste and Berry prosecution in order to pursue a defense of third-party culpability.  At the § 440.10 hearing, counsel "confirmed that he believed that the 'most logical' theory of the defense was third-party culpability." *Mosley*, 64 N.Y.S.3d at 712.  He nonetheless "explained that he did not subpoena the witnesses who provided testimony before the grand jury that indicted Battiste and Berry to testify at the trial because they were 'inherently unreliable,' for example, a known 'jailhouse snitch' and a purported drug addict who had changed her story multiple times." *Id.*

The record fully supports the Appellate Division's conclusion that counsel's decision was a tactical one that is unchallengeable on federal review.  The record supports that counsel's handling of the third-party culpability evidence was part of a well-calculated trial strategy in which he weighed the strengths and witnesses of each of the prior prosecution's witnesses in light of their known credibility issues before determining that the best trial strategy would be to allude to the case against Battiste and Berry without calling any of the witnesses from that case. As the Court of Appeal explained:

> Indisputably, [Mosley's] blood DNA and palm print were discovered at the scene and there was no physical evidence indicating that either Battiste or Berry were in the apartment.  Opting not to present potentially incredible witness testimony that would reflect poorly on [Mosley], trial counsel elicited testimony from the investigating officers that certain witnesses testified under oath that Battiste and Berry admitted that they were involved in the murders and that Battiste was seen outside of the victims' apartment the night of the murders.  Trial counsel also elicited testimony with regard to the victims' lifestyle and exposure to disputes with, among others, gang members locally, in New York City and in Pennsylvania.  In contrast, trial counsel highlighted that [Mosley] and Holley were friends and [Mosley] had no motive to murder the victims.

*Id.* at 712-13.

Counsel used that strategy to suggest to the jury that the police and the prosecution had pursued a wrongful prosecution and were doing so again. Although that strategy ultimately proved unsuccessful, counsel cannot be deemed ineffective for pursuing it, particularly when it has not been shown that an alternate strategy would have led to a better outcome. Counsel's proffered reasons for putting the case for third-party responsibility before the jury without endorsing it was reasonable in light of the available impeachment evidence against the witnesses in the Battiste and Berry prosecution.

Mosley next contends that counsel should have moved to suppress Mosley's statements to law enforcement (Ground 3). In support of his claim, however, Mosley cites only authority under New York state law where the New York courts have rejected federal authority that the right to counsel can attach only where the defendant is in police custody and concedes that he fails to "satisfy the federal standard" for his ineffective assistance claim. Docket No. 21 at 11. Again, his state-law claim does not provide an actionable basis for a federal ineffective assistance claim. *See Estelle*, 502 U.S. at 67-68. Moreover, as the Court of Appeal correctly determined, "[i]t is not disputed that [Mosley] voluntarily spoke with the police and never invoked his right to counsel, and we have determined that it was not error for County Court to allow testimony with regard to [Mosley's] statements to the police 'that revealed inconsistencies and omissions regarding important details.'" *Id.* at 713. As the record shows no basis for suppressing Mosley's statements, Mosley fails to show that counsel was deficient for failing to so move, or that Mosley was prejudiced by counsel's inaction even under state law. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance where counsel fails to raise meritless claims).

16

Mosley additionally claims in Ground 5 that counsel should have called as witnesses "forensic blood and meteorological expert" to "refute[] as false the principal contentions of the People's experts." The Court of Appeal rejected this claim on § 440.10 review as follows:

> As for the expert testimony, trial counsel claimed that there was inadequate time to find an expert after the People submitted a meteorologist's testimony on rebuttal and explained that he determined not to call a blood splatter expert because it was not possible to determine when [Mosley's] DNA was left at the scene, that is, during the murders or the next morning when [Mosley] admittedly went to the victims' apartment.
>
> While trial counsel's personal assessment of the defense is informative, it is certainly not dispositive because our obligation is to determine whether, "[v]iewed objectively, the transcript and the submissions reveal the existence of a trial strategy that might well have been pursued by a reasonably competent attorney." Generally, a trial counsel's determination to not call a particular witness, including an expert witness, will not necessarily constitute ineffective assistance of counsel.
>
> [W]e find that, under the circumstances, trial counsel's failure to retain certain experts did not constitute ineffective assistance of counsel. Trial counsel's cross-examinations of the People's experts were organized and effective and confirmed his knowledge of weather data and crime scene analysis. For example, trial counsel led the People's meteorologist to concede that it was not raining, and there was likely some ambient light when [Mosley] claimed that he was snowboarding. Further, after acknowledging that he had never actually been to the gorge, the meteorologist conceded that snow could be present on sheltered surfaces and that, based on the topography and the nature of drifting and blowing snow, he could not definitively state how much snow was on the ground in the gorge the evening before the victims were murdered. While [Mosley] takes issue with defense counsel's failure to call a bloodstain expert to address whether the blood on the bed sheet was a transfer pattern, i.e., consistent with [Mosley's] explanation, or a drop pattern, i.e., which would not be, the People's crime scene expert, Laura Pettler, had already testified that it was a transfer stain. Moreover, during his cross-examination, trial counsel elicited Pettler's opinion that the procedures that the police used when they processed the crime scene were not ideal, compromising her ability to develop her theory that the victims were murdered during the course of an argument and not during a planned robbery or gang-related murder. Consequently, she conceded that this theory was speculative. As for determining when the palm print was made based on the color of the blood, the medical examiner, Michael Sikirica, testified that "blood oxidizes and changes to a darker color—a process that can occur within a few minutes . . . but it may take hours to finally develop." Given variables such as temperature and humidity, Sikirica was unable to address how long it would take blood to dry. Notably, he did not opine as to the timing of the palm print and his explanation leaves that question unresolved.

*Mosley*, 64 N.Y.S.3d at 713.

17

The Appellate Division's determination is both reasonable and fully supported by the record.  Moreover, it does not contravene or unreasonably apply federal law, under which the ultimate decision of whether to call witnesses to testify is well within counsel's "full authority to manage the conduct of the [proceeding]."  *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision . . . to decide not to put certain witnesses on the stand . . . .").  "The decision of whether to call any witnesses on behalf of a defendant, and which witnesses to call or omit to call, is a tactical decision which ordinarily does not constitute incompetence as a basis for a claim of ineffective assistance of counsel."  *Speringo v. McLaughlin*, 202 F. Supp. 2d 178, 192 (S.D.N.Y. 2002); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).  Mosley is therefore not entitled to relief on this ground either.

In support of Ground 7, Mosley similarly avers that counsel should have called his wife as a witness to "refute false motive and opportunity evidence."  According to Mosley, the defense could have proffered evidence of his lifestyle, residence, and job to counter the prosecution's case against him.  As the Appellate Division explained, however, "[t]rial counsel did not call [Mosley's] wife to testify because he believed that her testimony could have been overshadowed by evidence of a domestic violence incident perpetrated by [Mosley]."  *Mosley*, 64 N.Y.S.3d at 712.  The record supports that trial counsel had a reasonable explanation for his decision—he testified that Mosley had told him that his wife had a drinking problem and that Mosley could get her to change her testimony.  In light of the potential witness's credibility and veracity issues, counsel's decision not to call her as a witness was reasonable and cannot form the basis of an ineffective assistance claim.

In Ground 8, Mosley complains that counsel should have objected when the prosecutor used a mugshot of Mosley from 2000. Mosley contends that counsel should have objected because Mosley's appearance in 2000, as shown in that mugshot, differed from his appearance in January 2002, when the murders were committed. But the record reflects that counsel introduced into evidence a photograph of Mosley taken in January 2002. As the Appellate Division noted, "the jury was aware that the photograph of [Mosley] displayed during the People's summation did not reflect [Mosley's] appearance in 2002, and County Court instructed the jury that commentary during opening and closing statements was not evidence." *Mosley*, 64 N.Y.S.3d at 714. Mosley thus fails to show that counsel was deficient in his handling of the 2000 photograph, or that Mosley was prejudiced as a result.

Mosley further contends that counsel should have objected to the prosecutor's question about Mosley's tattoo. According to Mosley, the question was intended to suggest to the jury that Mosley's tattoo evinced that he had the propensity to commit the murders. But as the Appellate Division noted, the challenged line of inquiry was a "single question about [Mosley's] tattoo." *Id.* at 713. It is not reasonably likely that the jury interpreted the question as Mosley now claims. Mosley fails to show that he was prejudiced by counsel's inaction, particularly when, as the Appellate Division reasoned, "review of the trial transcript indicates that trial counsel was reasonably concerned about the jury's perception of his frequent objections—which he claimed County Court overruled '95%' of the time." *Id.* at 713-14.

2.      Claims raised in appeal of CPL § 440.10 denial and summarily rejected

Mosley also raises in the instant Petition a number of claims that he raised to the Appellate Division on § 440.10 review that were summarily denied. In Ground 6, Mosley claims

that counsel should have presented evidence that he injured his hand in a roofing injury to

"refute false consciousness-of-guilt evidence" presented by the prosecution.  The record reflects

that Investigator Gary Gordon testified that, when he met with Mosley to bring him to the police

station to take Mosley's palm prints, one of Mosley's hands was "all scraped up."  Mosley

claimed that he had injured it while working on a roof.  Mosley now contends that counsel

should have presented the testimony of his friend, Robbie Palmer, to corroborate his story and

undermine any contention that Mosley intentionally injured his hand to avoid having palm prints

taken.  But Mosley cannot show that he was prejudiced by counsel's decision because the source

of Mosley's hand injury was an ancillary matter of little importance given that there was ample

testimony that Mosley was reluctant to provide his palm prints and had refused to do so multiple

times.

　　　　For the same reasons, Mosley fails to show that counsel violated his right to a public trial

by insisting that Mosley's mother and aunt leave the courtroom on the first day of trial (Ground

9).  Mosley provides no indication that the result of the proceeding would have been different if

his family had been present for the voir dire.  *See United States v. Gomez*, 705 F.3d 68, 80 (2d

Cir. 2013) (finding that ineffectiveness claim based on attorney's failure to object to the family's

exclusion from the courtroom during jury selection failed to meet the prejudice prong of

*Strickland*); *see also Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017) (holding that

prejudice is not presumed when a defendant raises a violation of right to a public trial on a claim

of ineffective assistance).

　　　　Mosley fares no better on his claim that counsel was ineffective for advising him not to

file a *pro se* motion to set aside the verdict pursuant to CPL § 330.30 on grounds of ineffective

assistance of counsel, prosecutorial misconduct, and insufficient evidence (Ground 12).  As relevant here, § 330.30 allows a court to set aside or modify a verdict on "[a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court."  N.Y. CRIM. PROC. LAW § 330.30(1).  Here, Mosley has now raised to the Appellate Division all the underlying claims that he contends should have formed the basis for the § 330.30 motion, and all claims have been rejected on the merits.  Mosley thus fails to show that counsel's advice was deficient or that he was prejudiced by it.

        3.      Claims not raised in appeal of CPL § 440.10 denial

Finally, Mosley raises two claims that do not appear to have been raised in his appeal of the denial of his CPL § 440.10 motion, namely, that counsel should have objected to the prosecutor's commenting on Mosley's pre-trial silence and invocation of his rights (Ground 4), and the prosecutor acting as an unsworn witness during the cross-examination of Mosley's mother (Ground 11).

This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim.  *Id.* at 365-66.  An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used.  *Jackson v.*

*Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).  To be deemed exhausted, a claim must also have

been presented to the highest state court that may consider the issue presented.  *See O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 845 (1999).  In New York, to invoke one complete round of the State's

established appellate process, a criminal defendant must first appeal his or her conviction to the

Appellate Division and then seek further review by applying to the Court of Appeals for leave to

appeal.  *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  Further, "when a 'petitioner failed

to exhaust state remedies and the court to which the petitioner would be required to present his

claims in order to meet the exhaustion requirement would now find the claims procedurally

barred,' the federal habeas court should consider the claim to be procedurally defaulted."  *Clark*

*v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d

117, 121 (2d Cir. 2001).

It appears that Mosley has not presented either of these claim to the state courts.

Consequently, they are unexhausted.  It is unclear from the record in these proceedings whether

these unexhausted claims are based on the trial court record.  If they are based on that record, the

claims could have been raised on direct appeal but were not; consequently, Mosley cannot bring

a motion to vacate as to such claims.  N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must

deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the

proceedings underlying the judgment to have permitted, upon appeal from such judgment,

adequate review of the ground or issue raised upon the motion, no such appellate review or

determination occurred owing to the defendant's unjustifiable failure to take or perfect an

appeal. . . .").  If they are based on evidence outside the record, however, they could still be

brought in a motion to vacate judgment under CPL § 440.10 because there is no time limit or number cap on § 440.10 motions.

But even if Mosley could still exhaust these claims in state court, the Court will not stay the Petition and allow Mosley to return to state court to satisfy the exhaustion requirements. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). Mosley has not requested that this Court stay and hold his Petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Here, both unexhausted claims are plainly meritless. With respect to his contention that counsel should have objected to the prosecutor's comment on Mosley's pre-trial silence and invocation of his rights, a suspect has a constitutional right not to speak to police after he is arrested and given his *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). As a consequence of that right, prosecutors are prohibited from commenting on a defendant's post-*Miranda* silence. *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976); *see also United States v. Lopez*, 500 F.3d 840, 844 (9th Cir. 2007) (prosecutor's comment on defendant's post-*Miranda* silence violates *Doyle*). The rationale for this rule "rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986) (citation and internal quotation marks omitted) (holding that prosecution may not use defendant's silence during case-in-chief). After the Supreme Court's decision in *Berghuis v. Thompkins*, 560 U.S. 370 (2010), "for a defendant to invoke either the right to

remain silent or the right to counsel, he must do so unambiguously," *United States v. Plugh*, 648 F.3d 118, 128 (2d Cir. 2011).

The Supreme Court, however, has declined to extend *Doyle* to situations where the defendant did not invoke his *Miranda* rights but waived them and gave a post-arrest statement. *See Anderson v. Charles*, 447 U.S. 404, 408 (1980) (per curiam). The factual determination of the state courts that Mosley did not invoke his right to remain silent is entitled to deference pursuant to § 2254(d)(2). *See Parsad v. Greiner*, 337 F.3d 175, 180 (2d Cir. 2003). Counsel therefore had no basis to object on *Doyle* grounds. *See Aparicio*, 269 F.3d at 99 (holding that it is not ineffective assistance where counsel fails to raise meritless claims).

Mosley's contention that counsel should have objected to the prosecutor impermissibly acting as an unsworn witness is similarly without merit. Contrary to Mosley's contention, the record reflects that counsel did in fact object to the prosecutor's line of questioning when the prosecutor attempted to impeach Mosley's mother with prior inconsistent statements made to the prosecutor during a pretrial interview. Although the court overruled the objection and found the questioning to be "permissible cross-examination," counsel cannot now be faulted when the record shows that he did make the objection. In sum, Mosley is not entitled to relief on any argument advanced in support of his ineffective assistance claims.

## V. CONCLUSION

Mosley is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 12, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge